**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **DIECE-LISA INDUSTRIES, INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| **DISNEY ENTERPRISES, INC.,** | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE:

DIECE-LISA INDUSTRIES, INC. files this, its Original Complaint, complaining of DISNEY ENTERPRISES, INC. and for causes of action shows as follows:

### PARTIES

1. Plaintiff Diece-Lisa Industries, Inc. ("DLI" or "Plaintiff") is a corporation organized under the laws of the State of New Jersey. DLI maintains its principal place of business located at 36 Cecelia Avenue, Cliffside Park, NJ 07010.

2. Defendant Disney Enterprises, Inc. ("DEI or "Defendant") is a corporation organized under the laws of the State of Delaware, having its principal place of business in Burbank, California. Disney Enterprises, Inc. may be served through its registered agent, Marsha L. Reed, 500 S. Buena Vista Street, Burbank, California 91521.

### JURISDICTION AND VENUE

3. The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338 because the Plaintiff asserts claims for damages pursuant to the Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq*. (the "Lanham Act"). This Court has

supplemental and/or pendent jurisdiction under 28 U.S.C. §§ 1367 and 1338(b) because any state common law claims asserted herein are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.  This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because the Plaintiff and Defendant are citizens of different States and the amount in controversy exceeds $75,000.00.

4. Defendant DEI has sufficient minimum contacts with the state of Texas in order to subject it to personal jurisdiction because Defendant DEI transacts substantial business within the State of Texas and in this District such that venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391.  Substantial events giving rise to this action have occurred in the Eastern District of Texas such that venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. § 1391.

## PLAINTIFF'S RIGHTS

5. Plaintiff DLI is the creator and/or owner of "Lots of Hugs" stuffed toy bears.

6. United States Patent No. 7,410,403 (the "Patent"), entitled "Hugging Toy" was duly and legally issued by the United States Patent and Trademark Office on August 12, 2008, after full and fair examination.

7. Plaintiff DLI is the assignee of all rights, title and interest in and to the Patent.  A true and correct copy of the U.S. Patent No. 7,410,403 is attached as Exhibit "1."  This patent is directed to a huggable bear children's toy.

8. U.S. Trademark Serial No. 77158139 for the word mark "Lots of Hugs" was duly and legally issued to by the United States Patent and Trademark Office on January 1, 2008, as U.S. Trademark Registration No. 3,361,849 (the "'849 Registration"), after full and fair examination.  A true and correct copy of the '849 Registration is attached hereto as Exhibit "2."

9. Plaintiff DLI is the owner of all rights, title and interest in and to the mark "Lots of Hugs" and the '849 Registration and all appertaining good will and possesses all rights of recovery under the '849 Registration, including the right to recover damages for past infringement.

10. In 1994, Plaintiff DLI created a soft pillowy stuffed animal initially referred to as "Snugglers." In February 1995, DLI licensed the "Snugglers" product to Happiness Express, Inc. In 1995, various trademarks were filed by Happiness Express, Inc., including an Intent to Use application for "Lots of Hugs" (as filed on October 26, 1995, which resulted in U.S. Trademark Registration No. 2,120,326 [the "'326 Registration"] as issued on December 9, 1997, as shown in the attached Exhibit "3"). In December 1995, Happiness Express, Inc. began the marketing and sale of "Lots of Hugs" stuffed toy bears. By February 1996, Happiness Express, Inc. introduced its "Lots of Hugs" stuffed toy bear product at various Toy Fairs. Happiness Express, Inc. began to broadcast television commercials marketing the "Lots of Hugs" stuffed toy bear product in 1996 (Exhibit "4") and sales commenced in mass markets, as well as specialty markets.

11. In 1996, Happiness Express, Inc. filed for bankruptcy court protection. In September 1996, Plaintiff DLI terminated the Happiness Express, Inc. license for the product. On November 4, 1996, the Bankruptcy Court assigned all Happiness Express, Inc. intellectual property rights to DLI, including the '326 Registration. The '326 Registration was cancelled by the U.S. Patent and Trademark Office on September 11, 2004, because Plaintiff DLI did not file an acceptable Section 8 [15 U.S.C. § 1058(a)(1)] Declaration.

12. Between 1997 and 2007, Plaintiff DLI developed, produced and sold "Lots of Hugs" stuffed toy bear products. Further, Plaintiff DLI licensed its "hugging technology" to

Applause—affiliated with Henson/Disney—for its sale of Jim Henson's "Bear in the Big Blue House" huggable stuffed bear product. *See* Exhibit "5."

13. As noted above, on April 17, 2007, Plaintiff DLI filed an application for U.S. Trademark registration of its "Lots of Hugs" mark (which became the '849 Registration on January 1, 2008) in preparation for additional licensing and use.

14. In August 2007, Plaintiff DLI's affiliate licensed its "Lots of Hugs" mark to Concord Industries for marketing, selling and distribution of bear products during the U.S. Olympics.

15. In August 2007, QVC initially launched its nationally televised "Lots of Hugs" Olympic Panda Bears sales, marketing and promotional activities due to its relationship with Concord Industries, as authorized by Plaintiff DLI (see Exhibit "6").

16. In August 2008, QVC again launched a nationally televised sales campaign for "Lots of Hugs" Olympic Panda Bears for the Beijing Olympics. The entire supply of in excess of 1000 available "Lots of Hugs" bears was quickly sold.

17. Between 1996 to date, Plaintiff DLI and its licensees have continuously marketed and sold "Lots of Hugs" stuffed toy bears. Since 2008, Plaintiff DLI has further nationally marketed and promoted its "Lots of Hugs" stuffed bears through its website at www.lotsofhugs.org.

**DEFENDANT'S ACTIONS**

18. Upon information and belief, Defendant DEI is a subsidiary of The Walt Disney Company ("Disney").

19. Upon information and belief, in about 2006, Disney acquired Pixar Animation Studios as one of its subsidiaries.

20. Disney, together with its subsidiaries, is a diversified worldwide entertainment company with operations in five business segments: Media Networks, Parks and Resorts, Studio Entertainment, Consumer Products and Interactive Media. Media Networks comprises international and domestic cable networks and its broadcasting business; Parks and Resorts comprises resorts and theme parks around the world, the Disney Cruise Line and licensed theme parks such as Tokyo Disney Resort in Japan; Studio Entertainment comprises live-action and animated theatrical and video motion pictures, musical recordings and live stage plays; Consumer Products comprises relationships with licensees, manufacturers, publishers and retailers throughout the world to design, develop, publish, promote and sell a wide variety of products based on DEI's intellectual property as well as its own publishing and retail businesses; Interactive Media Group creates and delivers branded entertainment games and lifestyle content across interactive media platforms.

21. A significant aspect of Disney's business is the merchandising and licensing of distinctive elements associated with DEI's motion picture and television programs. The distinctive elements licensed and/or merchandised include, but are not limited to, the world-famous characters featured in numerous animated short films, video games, feature length motion pictures and television programs produced over a period of more than seventy years, including, but not limited to, Mickey Mouse, Minnie Mouse, Pluto, Goofy, Winnie the Pooh, Tigger, various characters form the motion picture *Toy Story* and Handy Manny (from the television series *Handy Manny*) (hereinafter referred to as the "DEI Characters").

22. Disney has aggressively enforced its various intellectual property rights associated with its various DEI Characters, including associated copyrights and trademarks. For

example, see Exhibit "7," a Complaint was filed by Defendant Disney in the Central District of California, Civil Action No. 2:12-cv-07347 ("the CA Lawsuit") wherein Defendant DEI asserted well in excess of 200 copyright registrations (see Exhibit "7" and attached Exhibit "A") and in excess of 70 U.S. Trademark Registrations (see Exhibit "7" and attached Exhibit "B"—all related to DEI Characters). Recent similar enforcement cases include those also filed by Defendant DEI in the Central District of California being Civil Action No. 2:12-cv-09507 and No. 2:12-cv-10462, asserting like copyright and trademark registrations.

23.   Upon information and belief, Defendant DEI aggressively pursues the protection of Defendant DEI Characters by and through related copyrights and trademarks.

24.   Upon information and belief, Disney owns all rights and interests in the Pixar created, developed, and produced movie *Toy Story 3* and its characters. *Toy Story 3* is a 2010 American 3D computer-animated comedy-adventure film. *Toy Story 3* is the third installment in the *Toy Story* series. *Toy Story 3* was released by Disney. *Toy Story 3* was directed by Lee Unkrich. The film was released worldwide from June through October 2010 in Disney Digital 3-D, RealD, and IMAX 3D (Exhibit "8").

25.   The *Toy Story 3* plot focused on the toys Woody, Buzz Lightyear, and their friends, dealing with an uncertain future as their owner, Andy, prepares to leave for college. At one point in the story the toys are discarded and "escape" to the Sunnyside Day Care Center. The characters, Andy's toys, are welcomed by the many toys at Sunnyside and given a tour of the Day Care Center by various characters including one named "Lots-O'-Huggin'" bear a/k/a "Lotso" bear.

26.   The plot continues with the toys enjoying their new home, leaving the character Woody alone in an attempt to return to Andy. The character Woody's escape attempt fails and he

is found outside by a little girl, Bonnie, who takes him home and plays with him along with her other toys, who are well-treated, happy, and who readily welcome Woody. Woody is relieved until he hears about "Lots-O'-Huggin'" bear a/k/a "Lotso" bear's previous history from Chuckles, the sad clown.

27. The character "Lotso" bear, along with Chuckles and Big Baby, were once accidentally lost by their original owner, Daisy. The three found their way back to Daisy's home, but "Lotso" saw that he had been replaced with another "Lots-O'-Huggin'" bear.

28. Though Chuckles realized the truth, "Lots-O'-Huggin'" bear a/k/a "Lotso" bear convinced Big Baby that they had all been replaced. The three of them made their way to Sunnyside, which "Lotso" bear took over as his personal fiefdom, running it like a prison and a military base at night. Worried for his friends, Woody hurries back to the daycare to find that they have been confined to the room with the youngest toddlers.

29. After Andy's toys' first day spent at Sunnyside, Buzz discovers that the daycare is like a prison during night, and is captured by "Lotso's" gang, who gains his allegiance by having him reverted to demonstration mode, restoring his original "Space Ranger" persona from the first movie.

30. The other toys discover that Woody was right about Andy, but "Lots-O'-Huggin'" bear a/k/a "Lotso," with Buzz's help, prevents them from leaving the daycare.

31. "Lots-O'-Huggin'" bear a/k/a "Lotso" bear is a new character to the *Toy Story* movies and is integral to the plot line of *Toy Story 3,* as its principal antagonist.

32. *Toy Story 3* was an extremely successful motion picture of Defendant DEI. *Toy Story 3* broke records as the biggest opening day North American gross for an animated picture. *Toy Story 3* was the highest-grossing opening weekend for any Pixar film. The film was the

highest-grossing film of 2010 in the United States and Canada, and the highest-grossing film of 2010 worldwide. *Toy Story 3* became the first ever animated film in history to make over $1 billion in worldwide ticket sales. *Toy Story 3* merchandise has generated in excess of $7 billion at retail. *Toy Story 3* was one of the highest-grossing films of all time. *Toy Story 3* was nominated for five Academy Awards, including Best Picture, Best Adapted Screenplay, and Best Sound Editing. *Toy Story 3* won the Academy Awards for Best Animated Feature and Best Original Song (Exhibit "8").

33. Defendant DEI claimed copyright and trademark protection for certain of its *Toy Story* and *Toy Story 2* movie characters, but not for the *Toy Story 3* principal antagonist "Lots-O'-Huggin'" a/k/a "Lotso" bear character (see Exhibit "7" and attached Exhibits "A" and "B"). On the other hand, Defendant DEI's co-Plaintiff in the CA Lawsuit, DC Comics, had trademarks on its various protagonist characters such as BATMAN, ROBIN, BATWOMAN, SUPERMAN, WONDER WOMAN, as well as its various antagonists such as JOKER, LEX LUTHOR, MR. FREEZE (see Exhibit "7" and attached Exhibit "D"). Exemplar "antagonist" trademark registrations are shown in Exhibit "9."

34. Upon information and belief, Defendant DEI advertised, promoted, marketed, used, broadcasted, and displayed its *Toy Story 3* movie, including selling theater tickets, DVD's, Blu-Rays, and other related merchandise in the Eastern District of Texas, throughout the State of Texas, throughout the United States, as well as other locations throughout the world, all of which included the "Lots-O'-Huggin'" a/k/a "Lotso" bear character, through its five business segments detailed in paragraph 20 hereinabove. Indeed, so popular was the *Toy Story 3* movie, that it spawned a book "*The Art of Toy Story 3,*" which in part highlights "Lots-O'-Huggin'" a/k/a "Lotso" bear as shown in selected pages from this book, attached as Exhibit "10."

## INTERACTIVE GROUP'S FEAR OF DISNEY

35.     In about July 2011, Plaintiff DLI's affiliate entered into a License Agreement with Interactive Group ("IG") for IG to market and sell DLI's bear product.  IG was fearful to use the "Lots of Hugs" mark for the DLI licensed bear products in view of the worldwide success of the *Toy Story 3* movie—fearing Disney and consumer confusion with Defendant DEI's "Lots-O'-Huggin'" bear a/k/a "Lotso" bear character if IG should market and sell "Lots of Hugs" bears.  Subsequently, IG required that the licensed bears be marked "hugalots" instead of "Lots of Hugs."

36.     DLI's principal filed an application for U.S. Trademark for "hugalots," which resulted in U.S. Trademark Registration No. 4,262,625 (the "'625 Registration") a copy of which is attached as Exhibit "11."

37.     IG, and its licensee, have marketed and sold licensed "hugalots" bears, since July 2011.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION:  FEDERAL UNFAIR COMPETITION

38.     Plaintiff DLI adopts and re-alleges each paragraph above as if set forth herein.

39.     Upon information and belief, Defendant DEI had constructive knowledge, as well as actual knowledge, of Plaintiff DLI's "Lots of Hugs" mark and its '849 and '326 Registrations and actively sought to illegally appropriate for its own the "Lots of Hugs" mark and associated good will of Plaintiff DLI as a principal character for its *Toy Story 3* movie.

40.     Upon information and belief, Defendant DEI's decision to adopt and use the "Lots-O'-Huggin'" a/k/a "Lotso" bear character misappropriates Plaintiff's "Lots of Hugs"

identifier as Defendant DEI's principal antagonist character of the *Toy Story 3* movie.  Defendant DEI, and its subsidiary, Pixar, decided that this "Lots-O'-Huggin'" a/k/a "Lotso" character should be the star antagonist of its *Toy Story 3* movie, all without the license or authority of Plaintiff DLI.  Such actions by Defendant DEI, without authority of Plaintiff DLI, constitutes the acts of colorably imitating Plaintiff DLI's registered '849 Registration and its "Lots of Hugs" mark and applying such colorable imitation to labels, signs, prints, packages, products, wrappers, movies, characters or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods, products and/or services, which such use is likely to cause confusion, or to cause mistake, or to deceive.

41. Upon information and belief, Defendant DEI's adoption and use of its "Lots-O'-Huggin'" a/k/a "Lotso" bear character in its *Toy Story 3* movie is a use in commerce of a word, term, name, symbol or device, or any combination thereof, or a false designation of origin, a false or misleading designation of fact, or a false or misleading representation of fact, which—

> (A) is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, association of Defendant DEI with Plaintiff DLI, or as to the sponsorship, or approval of Defendant DEI's goods, services, or commercial activities by Plaintiff DLI; or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics or qualities of Defendant DEI's or Plaintiff DLI's goods, services or commercial activities.

42. Because of the success of the *Toy Story 3* movie worldwide, Plaintiff DLI is viewed as a junior user of the mark, when in fact it is the senior user of the mark "Lots of Hugs." Plaintiff DLI's valuable property rights in and to its "Lots of Hugs" mark and '849 Registration

have been destroyed by the overwhelming worldwide success of Disney's *Toy Story 3* movie, and the related notoriety of the "Lots-O'-Huggin'" a/k/a "Lotso" character of Defendant DEI.

43. Potential customers will likely improperly associate or confuse Defendant DEI's "Lots-O'-Huggin'" and "Lotso" character with Plaintiff DLI's stuffed toys, including its bears, as identified with Plaintiff DLI's "Lots of Hugs" mark.  In fact, Plaintiff DLI has been required to develop a new mark due to the likelihood of confusion with and the concern that Plaintiff DLI's "Lots of Hugs" toys will be improperly associated or confused with the Defendant DEI's "Lots-O'-Huggin'" and "Lotso" character.

44. Plaintiff DLI has been damaged as a result of Defendant DEI's wrongful conduct.  Thus, Defendant is liable to Plaintiff DLI in an amount that adequately compensates Plaintiff DLI for Defendant DEI's acts of unfair competition.  Plaintiff DLI is entitled to recover that portion of Defendant DEI's profits that result from Defendant DEI's wrongful acts, including but not limited to multiple damages, occasioned as a result of such unfair competition and unjust enrichment, as well as recovery of Plaintiff's reasonable attorney's fees.  Plaintiff DLI is entitled to enjoin such acts of infringement of Defendant DEI.

45. The acts of the Defendant DEI complained of herein constitute unfair competition in violations of 15 U.S.C. § 1125(a).

### SECOND CAUSE OF ACTION: TRADEMARK INFRINGEMENT

46. Plaintiff DLI adopts and re-alleges each paragraph above as if set forth herein.

47. Defendant DEI is, without the consent of Plaintiff DLI, using in commerce a colorable imitation of Plaintiff DEI's registered "Lots of Hugs" trademark, registered under the '326 Registration and again under the '849 Registration, in conjunction with the sale, offering for sale, distribution, or advertising of the *Toy Story 3* movie.  In particular, but without limitation,

Defendant DEI is using the mark "Lots-O'-Huggin" as the name of a principal character, a bear, in *Toy Story 3*. This use of "Lots-O'-Huggin" by DEI is likely to cause confusion—and in particular, but without limitation, reverse confusion—or to cause mistake, or to deceive. Therefore, Defendant DEI is infringing Plaintiff DLI's trademark under 15 U.S.C. § 1114(1)(a).

48.     Pursuant to 15 U.S.C. § 1117(a), Plaintiff DLI seeks Defendant DEI's profits, the damages sustained by Plaintiff DLI, and costs of this action. As to the damages assessment, Plaintiff DLI seeks up to three times that amount, in light of the circumstances of this case. Also, in the event that the recovery based on Defendant DEI's profits is inadequate, Plaintiff DLI seeks such amount as the Court finds to be just in its discretion, in light of the circumstances of the case.

49.     In the event the Court should find that Defendant DEI knew of Plaintiff DLI's mark, but nonetheless deliberately chose to use the mark without consulting with or obtaining any permission or license from Plaintiff DLI, then Plaintiff DLI submits this is an exceptional case and seeks an award of its attorneys' fees to Plaintiff DLI as the prevailing party.

### THIRD CAUSE OF ACTION: COMMON-LAW UNFAIR COMPETITION

50.     Plaintiff DLI adopts and re-alleges each paragraph above as if set forth herein.

51.     To whatever extent Plaintiff DLI's "Lots of Hugs" mark may not be protected under federal law, under the foregoing allegations the mark is protected under Texas common law, and Defendant DEI has infringed Plaintiff DLI's mark or committed acts of unfair competition against Plaintiff DLI under Texas common law.

### JURY DEMAND

52.     Pursuant to Rule 38(b), FRCP, Plaintiff DLI demands a trial by jury.

## **PRAYER FOR RELIEF**

Plaintiff DLI prays that judgment be entered against Defendant DEI finding and awarding Plaintiff DLI the following:

1. A declaration that the Defendant DEI's adoption and use of the "Lots-O'-Huggin" a/k/a "Lotso" character in the *Toy Story 3* movie has misappropriated and otherwise unfairly competed with Plaintiff DLI;

2. A declaration that Defendant DEI has infringed on Plaintiff DLI's "Lots of Hugs" registered trademark under 15 U.S.C. § 1114(a);

3. All damages, actual or otherwise, as well as Defendant DEI's profits attributable to such misappropriation or unjust enrichment, as a result of the infringement and wrongful conduct of Defendants, per 15 U.S.C. § 1114(1)(a), 15 U.S.C. § 1117(a), and 15 U.S.C. § 1125(a);

4. In accordance with the circumstances of this case, three times Plaintiff DLI's damages be awarded to Plaintiff DLI, per 15 U.S.C. § 1117(a);

5. In accordance with the circumstances of the case, such sum as the Court may find to be just with respect to Defendant DEI's profits, per 15 U.S.C. § 1117(a);

6. A finding that this case to be exceptional, and awarding Plaintiff DLI its reasonable attorney's fees, per 15 U.S.C. § 1117(a);

7. An injunction enjoining all future use by Defendant DEI of the "Lots-O'-Huggin'" and "Lotso" mark or character or any other character confusingly similar as to Plaintiff's "Lots of Hugs" mark, per 15 U.S.C. § 1116;

8. All costs of this action; and

9. All such other further relief at law or in equity to which Plaintiff may be entitled.

Respectfully submitted,


/s/ Richard L. Schwartz
Richard L. Schwartz
Texas Bar No. 17869500
rschwartz@whitakerchalk.com
Thomas F. Harkins
Texas Bar No. 09000990
tharkins@whitakerchalk.com

**WHITAKER CHALK SWINDLE
& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Phone: (817) 878-0500
Fax: (817) 878-0501

/s/ Wesley Hill
Wesley Hill
Texas Bar No. 24032294
wh@wsfirm.com
T. John Ward, Jr.
Texas Bar No. 00794818
jw@wsfirm.com

**WARD & SMITH LAW FIRM**
P.O. Box 1231
Longview, Texas 75606-1231
Phone: (903) 757-6400
Fax: (903) 757-2323

**ATTORNEYS FOR PLAINTIFF
DIECE-LISA INDUSTRIES, INC.**